**FELIX INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 00–1239.

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 2001.

Decided June 12, 2001.

Peter D. Stergios argued the cause for petitioner. With him on the brief was Elliot Jay Mandel.

Julie F. Marcus, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Leonard R. Page, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Margaret A. Gaines, Supervisory Attorney.

Before: GINSBURG, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

An employee telephoned his supervisor to press his right under a collective bargaining agreement to receive premium pay for working night shifts. In the ensuing conversation the employee thrice directed obscenities at his supervisor, for which he was promptly fired. The National Labor Relations Board decided that the firing violated § 8(a)(1) of the National Labor Relations Act, § 29 U.S.C. 158(a)(1), because the employee's conduct remained protected by § 7 of that Act, 29 U.S.C. § 157, notwithstanding his abusive speech. The employer now petitions for review, and the Board applies for enforcement, of that decision.

This case turns upon the four factors the Board considers pursuant to *Atlantic Steel*

*Co.*, 245 NLRB 814 (1979), to determine "whether an employee engaged in protected activity loses the protection of the Act by opprobrious conduct: (1) the place of the discussion; (2) the subject matter of the discussion; (3) the nature of the employee's outburst; and (4) whether the outburst was, in any way, provoked by an employer's unfair labor practice." *Felix Indus., Inc.*, 331 NLRB No. 12, slip op. at 1 (2000). The Board's analysis of the third factor in this case was arbitrary and capricious in that it departed from its own precedent and that of this court. We therefore grant the petition for review and remand this case for the Board to reweigh that factor as part of its four-factor balancing test.

## I. Background

Felix Industries, Inc. is a general contractor specializing in the construction of highways and utilities. Salvatore Yonta, a dockbuilder on the day shift since 1989, was assigned to the night shift in the second week of September 1996. Yonta's immediate supervisor at the time was Felix Petrillo, whose father was the president of the Company.

Under the collective bargaining agreement then in place Yonta was entitled to a "night differential": he was to be paid for nine hours of work every time he worked an eight-hour shift during specified hours. Upon joining the night shift Yonta asked his shop steward about the night differential. The shop steward then consulted Petrillo, who told the steward to consult the union; the steward thereafter told Yonta he would receive the differential. When Yonta did not receive the differential with his next pay check (for the period ending September 15) he contacted the superintendent of steam operations at his site, who told him to contact Petrillo. After getting his checks for the periods ending September 22 and 29, again without the differential, Yonta contacted the union's business agent, who confirmed that Yonta was entitled to the extra pay.

On the morning of October 7 — three weeks after the issue was first brought to Petrillo's attention — Yonta, who was at home, called Petrillo at his office to ask about the differential. Petrillo assured Yonta he would get "every penny" to which he was entitled. He also told Yonta he was tired of "carrying" him. Yonta, who was 42 years old, retorted that Petrillo, who was 25, was "just a f—king kid," and added, "I don't have to listen to a f—king kid." When Petrillo asked what Yonta had just called him, Yonta obligingly confirmed it was "a f—king kid." Petrillo told Yonta he would get a check with all his hours, and Yonta was fired that same day.

An Administrative Law Judge, applying the balancing test of *Atlantic Steel*, held that although "the subject matter of the [Yonta–Petrillo] discussion was protected," Yonta "had lost the protection" of the Act upon directing obscenities at his supervisor, Petrillo. 331 NLRB No. 12, slip op. at 8. The Board, with one Member dissenting, disagreed with the ALJ's application of *Atlantic Steel*'s four factors. Deeming Yonta's conduct protected under § 7, the Board majority held that Felix had violated § 8(a)(1) by firing Yonta, and ordered Felix to reinstate him with backpay. *Id.* at 1–3.

## II. Analysis

In *Atlantic Steel Co.* the Board established that

> even an employee who is engaged in concerted activity can, by opprobrious conduct, lose the protection of the Act. The decision as to whether the employee has crossed that line depends on several factors: (1) the place of the discussion; (2) the subject matter of the discussion; (3) the nature of the employee's outburst; and (4) whether the outburst

was, in any, way provoked by an employer's unfair labor practice. 245 NLRB at 816. Felix nonetheless suggests initially that Yonta's conduct is categorically unprotected, but it stops short of arguing that the four-factored balancing test of *Atlantic Steel* is itself unlawful. Instead, Felix argues that the Board unreasonably applied that test to the facts of this case.

## A. Place of the discussion

█ In holding that the place of Yonta's discussion with Petrillo did not weigh against protecting Yonta's conduct under the Act, the Board first opined that a telephone conversation is "no more or less likely a situs [than the typical workplace setting] for the type of labor-management dispute where intemperate language is often tolerated." The Board also considered it important that "no other employees heard or observed Yonta's statement to Petrillo" and that the "comments were not made at work and did not have any direct impact on worker discipline." 331 NLRB No. 12, slip op. at 2.

Felix asserts that the Board illogically assumed that private insubordination cannot affect discipline in the workplace. The Board, however, made no such assumption; it simply said that Yonta's rant "did not have a direct impact on workplace discipline," suggesting quite reasonably that any effect would be smaller than if his outburst had occurred in the presence of other employees.

Felix also argues that because Yonta's obscene statements were made outside the formal grievance process, to which the Board accords special protection, the place of discussion should weigh against protection. That is a *non sequitur*. The Board implied that the place weighed neither in favor of protection, as it would if the obscenities had been used in a formal grievance setting, nor against it, as it would if they had been hurled at Petrillo in the presence of other employees. That resolution certainly is not arbitrary and capricious.

## B. Subject matter of the discussion

█ There is no dispute that Yonta telephoned Petrillo to pursue his collectively-bargained right to be paid the night differential. Accordingly, the Board, along with the ALJ, determined that the subject matter of their conversation "concerned Yonta's rights under the collective-bargaining agreement and thus constitute[d] protected ... activity." *Id.* at 2, 7–8. Felix therefore cannot credibly argue that the subject matter of the conversation does not weigh in favor of protection. Still, it tries. Felix parses Yonta's words to show that the obscenities, not surprisingly, had nothing to do with Yonta's collective bargaining rights. That of course misses the Board's point: As the Board explained, the obscenities were "intertwined with [the] protected activity" — as they are in every case governed by *Atlantic Steel* — and the Board's task was to determine whether the employee lost the protection of the Act as a result of the obscenities. *Id.* at 3. Felix's attempt to bifurcate the conversation is unavailing, therefore.

## C. Nature of outburst

We agree with Felix that the Board's treatment of the nature of Yonta's obscene eruption is problematic. All the Board said on this score is that "Yonta's conduct consisted of a brief, verbal outburst of profane language, unaccompanied by any threat or physical gestures or contact." From that the Board reasoned that this factor did not "weigh[] in favor of Yonta losing the protection of the Act." *Id.* at 2.

█ Recall that Yonta's outburst — though "brief" and "verbal" — consisted of calling his supervisor a "f—king kid" no less than three times, and insisting that Yonta need not listen to him. That no

threat or physical violence accompanied this insubordinate vitriol cannot, under established law, prevent it from "weigh[ing] in favor of . . . losing the protection of the Act."

■ In *Atlantic Steel* the Board expressly disavowed any rule whereby otherwise protected activity "would shield any obscene insubordination short of physical violence." 245 NLRB at 817. Yet the Board's treatment of the third *Atlantic Steel* factor in this case runs toward precisely such a rule. In addition, this court previously rejected a suggestion from the Board that employees engaging in protected activity "could not be dismissed unless they were involved in flagrant, violent, or extreme behavior"; as we pointed out, § 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c), permits discharge for "cause" short of that. *Aroostook County v. NLRB*, 81 F.3d 209, 215 n. 5 (1996); *see also Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 803 n. 10, 65 S.Ct. 982, 89 L.Ed. 1372 (1945) ("The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time"). If an employee is fired for denouncing a supervisor in obscene, personally-denigrating, or insubordinate terms — and Yonta here managed all three with economy — then the nature of his outburst properly counts against according him the protection of the Act.

The Board here truly does not contend otherwise; rather, it observes that it could, notwithstanding the nature of Yonta's outburst, deem his conduct protected as a result of its overall balancing of the four factors. That is correct but irrelevant; it does nothing to rehabilitate the Board's actual treatment of the third factor in its order, where it blandly asserts that Yonta's statements did not "weigh[ ] in favor of Yonta losing the protection of the Act." Under the applicable precedents Yonta's

statements do weigh against protection. Whether they weigh enough· to tip the balance in that direction is for the Board to decide on remand.

### D. Provocation by unfair labor practice

The Board, interpreting Petrillo's comment that he was tired of "carrying" Yonta as "convey[ing] at least an implicit threat that Yonta could lose his job for having engaged in the protected activity," found that Petrillo committed an unfair labor practice, which in turn provoked Yonta's obscenities. 331 NLRB No. 12, slip op. at 2. Felix challenges those factual determinations. First, Felix argues there is no evidence in the record that shows Petrillo's "carrying" comment preceded rather than followed Yonta's vulgar outburst. Actually, there is substantial and uncontradicted evidence to that effect: Yonta testified that the conversation unfolded in that order, whereas Petrillo could not recall the sequence.

■ Second, Felix objects to the Board's characterization of Petrillo's "carrying" remark about Yonta as an implied threat. The ALJ and the dissenting Member thought Petrillo's remark referred to Yonta's sub-par performance, not to his claim to the night differential. *Id.* at 4, 7. There is evidence in the record both that Yonta's performance was indeed subpar and that Petrillo tried to mollify Yonta, not to meet his demand for the differential with a threat. Still, the record as a whole contains substantial evidence to support the Board's characterization. The Board reasonably found that "Petrillo's remark was angrily made in response to Yonta's pressing his right to extra pay under the contract. Although Petrillo credibly testified that he had previously received supervisory complaints about Yonta's work, Petrillo did *not* testify that he mentioned these complaints in the phone discussion."

*Id.* at 2. And, as the Board points out, Petrillo's statement must be evaluated from Yonta's perspective: Petrillo's intent in making the remark about carrying Yonta does not necessarily mirror the impression it reasonably could have made upon Yonta. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Therefore, we find no reason to disturb the Board's treatment of this factor.

### III. Conclusion

Because the Board's offhand treatment of the nature of Yonta's outburst departs from precedent, we hold that it is arbitrary and capricious. Upon remand of this case, the Board will need to reexamine that factor as part of its overall weighing of the *Atlantic Steel* factors. In doing so it must either adhere to precedent or else justify, if it can, its departure therefrom. Accordingly, Felix's petition for review is granted, the Board's application for enforcement is denied, and this matter is remanded to the Board for further proceedings consistent with this opinion.

*So ordered.*