**DEPARTMENT OF THE AIR FORCE, 315TH AIRLIFT WING, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**American Federation of Government Employees Local 1869, Intervenor.**

**No. 01–1275.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 25, 2002.

Decided July 12, 2002.

Robert D. Kamenshine, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs was William Kanter, Deputy Director.

William E. Persina, Attorney, Federal Labor Relations Authority, argued the cause for respondent. On the brief were David M. Smith, Solicitor, William R. Tobey, Deputy Solicitor, and Ann M. Boehm, Attorney.

Mark D. Roth and Stuart A. Kirsch were on the brief for intervenor.

Before: SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The Department of the Air Force petitions for a review of the Federal Labor Relations Authority's ("FLRA" or "Authority") decision in which the FLRA held that the Air Force committed an unfair labor practice by suspending for three days without pay an employee/union official who, while purporting to represent a fellow employee, among other acts, assaulted a supervisor and came into physical contact with her. The Air Force argues that the conduct of the union official is unprotected under the applicable federal

labor laws, 5 U.S.C. § 7102, and that the FLRA has both misapplied its own precedent regarding "flagrant misconduct" and improperly interpreted 5 U.S.C. § 7102. Because we agree with the Air Force that the conduct of the union official is unprotected under any reasonable standard, we grant the petition for review and reverse the FLRA.

## I. Background

Sharon Richardson, a union-represented employee at Charleston Air Force Base, participated in a performance feedback session with Georgia Fallaw, an air reserve technician who also serves as aircraft overhaul supervisor, on October 1, 1998. Fallaw had informed Richardson that she wanted to conduct a performance feedback session earlier that day, and Richardson arrived at Fallaw's office with Richard Egal, the local union president, purportedly to represent her. Fallaw advised that this session was not going to be a disciplinary action and therefore Egal would not be allowed to attend the meeting. Fallaw asked Egal to leave because she feared that he had accompanied Richardson to intimidate and harass her. *See Dep't of the Air Force, 315 Airlift Wing, Charleston Air Force Base,* 57 F.L.R.A. 80, 87, 2001 WL 1035063 (2001) (*"Charleston Air Force Base"*).

When, apparently properly, Fallaw told Egal to leave, he became angry "and appeared at least somewhat out of control." *Id.* at 91. Egal "asked Fallaw whether she was denying Richardson's right to union representation." *Id.* at 87. Egal was "in [Fallaw's] face" and was "so forceful in his body language that [Fallaw] felt compelled to retreat from him as much as ... possible." *Id.* at 90. Further, there was physical contact between Egal and Fallaw, with his "stomach pressed up against her." *Id.* Egal was "belly to belly and toe to

toe, in [Fallaw's] face," forcing her to arch backward over a counter. *Id.* at 88. His "total pattern of conduct at that moment, could reasonably have put Fallaw in fear of some unpredictable blow." *Id.* at 90. This confrontation went on somewhere between 10 and 20 seconds, *id.* at 91, after which Egal left. Fallaw and Richardson proceeded with the feedback session.

Egal received a "Notice of Proposed Suspension" on November 30, 1998, stating that a three-day suspension without pay was proposed based on his "flagrant misconduct" toward Fallaw on October 1. *Id.* at 89. Egal disputed the factual allegations and claimed his conduct was within his rights as a union representative. The Air Force conducted an investigation, concluded that the allegations of misconduct were supported, and issued a "Notice of Decision to Suspend" on January 15, 1999, implementing the proposed suspension for three calendar days without pay. *Id.*

The Union filed an unfair labor practice charge alleging that the Air Force violated 5 U.S.C. § 7116(a)(1) and (2) by suspending Egal for participating in protected activities, and the FLRA's Regional Director issued a complaint to that effect. Summary judgment was denied and the case proceeded before an Administrative Law Judge ("ALJ"). The ALJ made factual findings as to Egal's actions and considered whether Egal's activity was protected under the applicable labor laws. He noted that 5 U.S.C. § 7102 "guarantees employees the right to engage in activities on behalf of a labor organization without fear of ... reprisal," but that "involvement in such activities does not immunize an employee from discipline." *Id.* at 91. The ALJ first determined that Egal's conduct occurred during the course of protected activity, and thus was to be evaluated under the FLRA's "flagrant misconduct" standard. *Id.* Second, he concluded that

"Egal did not exceed the broad scope of intemperate behavior that remains within the ambit of protected activity." *Id.*

In reaching his decision, the ALJ analyzed the "attack," as he characterized it, *id.* at 92, using the four factors for determining flagrant misconduct described in *Department of the Air Force, Grissom Air Force Base,* 51 F.L.R.A. 7, 11–12, 1995 WL 604627 (1995) ("*Grissom*"). These factors are: "(1) the place and subject matter of the discussion; (2) whether the employee's outburst was impulsive or designed; (3) whether the outburst was in any way provoked by the employer's conduct; and (4) the nature of the intemperate language and conduct." *Id.* at 12. He found that neither the place nor the subject matter of Egal's confrontation impinged on the Air Force's right to maintain order and respect and that the behavior was impulsive, not preplanned. The ALJ suggested that although Fallaw did nothing in the nature of a direct provocation, it was "at least somewhat provocative for her to have told Egal that his very presence was designed to intimidate and harass her." *Id.* at 92. Finally, on the fourth factor, the nature of the language and conduct, the ALJ compared this incident to that considered in *Air Force Flight Test Center, Edwards Air Force Base,* 53 F.L.R.A. 1455, 1464–65 (1998) ("*Flight Test Center*") and found it to be comparable. The ALJ gave little weight to the touching, which he discounted as "marginal[ ]," because of the "evidence of provocation" and the "brevity of the attack." *Charleston Air Force Base,* 57 F.L.R.A. at 90, 92. Despite the fact that he found that there was "some 'touching,'" "yelling," and "ranting and raving," and that Egal's "total pattern of conduct at that moment, could reasonably have put Fallaw in fear of some unpredictable blow," *id.* at 90, 92, the ALJ concluded that Egal's behavior, while misconduct, "was not 'flagrant' by Authority stan-

dards." *Id.* at 93. Thus, the ALJ determined the Air Force had committed an unfair labor practice and recommended that the FLRA order the Air Force to cease and desist, rescind the suspension, and clear Egal's record.

The FLRA, by a 2–1 vote, agreed and adopted the ALJ's findings, conclusions, and recommended decision and order. *Id.* at 80. The Authority noted that "the disputed conduct was 'assuming a physical position with respect to [the supervisor] that was so close as to have involved some "touching" and ... his use of certain threat-like gestures and an angry demeanor, accompanied by a sort of ranting, all in the course of 10 to 20 seconds'" and that the ALJ "also found, however, that the touching was only 'marginal.'" *Id.* While "not condon[ing] what the [ALJ] described as 'both verbal outbursts and allegedly belligerent nonverbal conduct,'" the FLRA opined that "similar conduct has been found protected." *Id.* (citing *Flight Test Center*). Moreover, the Authority observed that the physical contact that had occurred in *United States Department of Labor Empl. and Training Admin.,* 20 F.L.R.A. 568, 569 (1985) ("*USDOL*") did not violate the Act. *Charleston Air Force Base,* 57 F.L.R.A. at 81. Although acknowledging the dissent of Chairman Cabaniss as "correctly point[ing] out" that the FLRA "has considered physical responses by union and management representatives to be 'beyond the limits of acceptable behavior,'" the Authority stated it had "never adopted a *per se* rule that any touching violates the Statute." *Id.* (quoting *United States Dep't of Justice, United States Marshals Service,* 26 F.L.R.A. 890, 901, 1987 WL 90493 (1987) ("*U.S. Marshals*")). The FLRA concluded that even if this were an "assault and battery," a determination it was not willing to make, that fact would not be dispositive

of the question of flagrant misconduct. *Id.* Therefore the Authority upheld the ALJ's finding of an unfair labor practice. In doing so, the FLRA "note[d] the dissent's suggestion that, even if the union representative did not engage in flagrant misconduct, the representative's activities could be found unprotected," but dismissed it, saying: "We are not aware of any authority supporting this suggestion." *Id.* at n. 3.

Chairman Dale Cabaniss filed a dissent.

## II. Analysis

▇▇▇ The statute governing review of a final order of the FLRA incorporates section 706 of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 7123(c); 5 U.S.C. § 706. "Thus, when acting 'within its authority' and 'consistent with the congressional mandate,' the Authority's decision may only be set aside if it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ass'n of Civilian Technicians, Tx. Ch. 100 v. FLRA,* 250 F.3d 778, 782 (D.C.Cir.2001) (quoting 5 U.S.C. § 706(2)(A); *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97 & n. 7, 98 n. 8, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983)). "[T]he Court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Review of the FLRA's interpretation of its own enabling statute is governed by the familiar two-step test of *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When Congress has spoken,

we are bound by that pronouncement and that ends this Court's inquiry. *Id.* at 842–43, 104 S.Ct. 2778 (*Chevron*'s step one). Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778 (*Chevron*'s step two). The agency's interpretation of the statute is entitled to deference only if it is reasonable and consistent with the statute's purpose. *See Independent Ins. Agents of Am., Inc. v. Hawke,* 211 F.3d 638, 643 (D.C.Cir.2000). The FLRA's decision that the tortious if not criminal conduct committed by Egal in this case is protected by 5 U.S.C. § 7102 cannot survive even the forgiving standards of arbitrary-and-capricious and *Chevron* review.

### A. *Chevron Review*

▇▇▇ We begin with *Chevron* review, as the interpretation of the statute is fundamental to the final decision and as it provides precedent for future decisions of the Authority. Section 7102(1) establishes the right of a federal employee "to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization. . . ." As the ALJ recited, "Section 7102 . . . guarantees employees the right to engage in activities on behalf of a labor organization without fear of penalty or reprisal." *Charleston Air Force Base,* 57 F.L.R.A. at 91. Certainly the language of that statute is of the ambiguous sort to which *Chevron* applies, and certainly the purpose is that declared by the ALJ. Therefore, we readily move to the second step of *Chevron* to determine whether the FLRA's interpretation and application of the statute is reasonable.

The ALJ (and the FLRA) identify " 'flagrant misconduct' as *the* standard" for con-

duct that exceeds the boundaries of protected activity under § 7102. *See id.* (emphasis in original). Given the factual findings of the ALJ as adopted by the FLRA, for this court to affirm the Authority's interpretation of § 7102(1) as applied in this case, we would have to hold that Congress, in adopting § 7102, encompassed the following intent:

> A woman in the federal workplace must be aware that if one of her fellow male employees wishes to confront her physically, force her to go belly-to-belly, place her in reasonable fear of an unpredictable blow while ranting and raving at her, and if her agency takes any action to protect her, the male employee cannot be disciplined provided only that he was purporting to act on behalf of a labor organization when he committed the assault, battery, and harassment of his female co-worker.

Is it reasonable to suppose that Congress, the same branch of government that enacted Title VII, 42 U.S.C. § 2000e–2(a)(1), a statute held to protect against sexual harassment, intended to immunize this employee conduct from agency discipline by the adoption of the language of § 7102? *See, e.g., Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("The phrase 'terms, conditions, or privileges of employment' [of 42 U.S.C. § 2000e–2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.") (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). To ask that question is to answer it. Women in the workplace today do not have to tolerate offensive touching. If they complain of such they do not have to contemplate being accused of provoking the male co-worker by something they might have said. No one in the workplace has to put up with the kind of conduct found as fact by the ALJ and adopted by the Authority.[1]

Granted, the language of § 7102(1) is ambiguous. Potentially there could be many possible interpretations of what it means "to act for a labor organization . . . [and] to present the views of the labor organization." But it is not reasonable to suppose that Congress considered it permissible and immune from consequence for an employee to commit an assault and battery against a co-worker while ranting, raving and out of control. No employee, including a union official acting in a representational capacity, has the right to put another in fear of being struck or to commit a battery in order to "present the views of the labor organization" and "engage in collective bargaining." 5 U.S.C. § 7102. If the FLRA's "flagrant misconduct" standard permits such conduct, as the FLRA held it did here, then that standard is an unreasonable interpretation of the limits of § 7102.

To defend its surprising decision, the Authority can only argue that its "flagrant misconduct" standard provides a reason-

---

1. Nothing herein is intended to suggest that Egal's assault would have been immunized had the victim been a male co-worker or that the conduct would have been immunized had it been that of a supervisor acting upon the part of management. *Cf. Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Congress has not shown any intention to render any workers in the federal workplace defenseless against assault, battery, or other crimes or torts committed by their co-workers whether or not in the course of a labor dispute. Employers may and must be allowed to punish such behavior to maintain basic civility. *See Adtranz ABB Daimler–Benz Transp. v. NLRB,* 253 F.3d 19, 27–28 (D.C.Cir.2001).

able interpretation of § 7102. While this begs the question as to whether the tortious and probably criminal acts of Egal constituted "flagrant misconduct," *see* Part II.B, *infra*, we note that the Authority has offered us little to justify the standard itself. While reciting the formulation that the right to engage in protected activity permits "leeway for impulsive behavior," the Authority does nothing to tie that vague proposition to its conclusory standard other than to describe the standard as "long-held." We are not persuaded. Of course flagrant misconduct is not protected by virtue of § 7102. But the FLRA's tortured application of its standard here cannot be a reasonable interpretation of the limit of § 7102. Before us the Authority relies in part on parallels from private sector labor law. We find those precedents instructive on this point but not helpful to the Authority. As we recently reminded the National Labor Relations Board ("NLRB"), "merely applying an unreasonable statutory interpretation for several years cannot transform it into a reasonable interpretation." *Adtranz*, 253 F.3d at 26 (citation and internal brackets omitted).

The *Adtranz* decision is instructive on a specific issue of the present case as well. In *Adtranz*, the NLRB had held that it was an unfair labor practice for an employer to issue a handbook barring abusive and threatening language from one employee to another, *id.* at 25, as the Board deemed that restriction to have the "potential to chill the exercise of protected activity...." *Id.* In rejecting the NLRB's interpretation of the National Labor Relations Act, we held that "it is preposterous" for the Board to hold "that employees are incapable of organizing a union or exercising their other statutory rights under the NLRA without resort to abusive or threatening language." *Id.* at 26. It is at least equally preposterous for the FLRA to con-clude that Congress could reasonably have contemplated that federal employees are incapable of exercising their rights under § 7102 without ranting, raving, assaulting, battering and harassing their co-workers.

## B. *APA Review*

■ No matter what standard the Authority applies, nor what deference we apply in reviewing it, the FLRA's decision fails the arbitrary and capricious review applicable under the Administrative Procedure Act. As the Authority's chairman advised its majority, no matter how carefully the ALJ and the majority of the Authority parsed its words:

> [T]he Union representative engaged in an "attack" verbally and physically against the supervisor by physically touching up against her while not being in complete control of himself and acting in an angry manner, effectively backing her up against a counter and forcing her to lean backward in an attempt to get away from him, and that the representative was using threat-like gestures so forcefully that she could reasonably fear being hit by some unpredictable blow from him.

*Charleston Air Force Base*, 57 F.L.R.A. at 83 (dissent of Chairman Cabaniss). We further agree with the Chairman that one really does not need "to review a legal dictionary to conclude that the conduct above amounts to an assault as well as a battery, but the seventh edition of *Black's Legal Dictionary* confirms the impact of improper touching and reasonable apprehension of harm." *Id.*

With that in mind, we cannot understand what definition of "flagrant misconduct" would exclude the conduct set forth here. Despite the attempts of the majority of the Authority to somehow erase the assault by calling it "marginal," any appli-

cation of the "flagrant misconduct" standard which fails to encompass the facts of this case requires some explanation. Indeed, it is difficult to conceive what explanation could prevent the Authority's decision from being arbitrary and capricious and in default of its duty under the Administrative Procedure Act. In its opinion the Authority hardly attempts any such analysis, limiting its justification to the descriptive facts

> that the incident: (1) occurred in a private office, outside the presence of any nonsupervisory employees other than those involved; (2) was impulsive; (3) was somewhat provoked by the supervisor.

*Charleston Air Force Base,* 57 F.L.R.A. at 80. The Authority does not explain how any of those factors prevent an assault and battery accompanied by ranting and raving in the workplace from being flagrant misconduct. In short, just as the Authority's legal interpretations fail *Chevron* review, its decisionmaking process fails even the forgiving arbitrary-and-capricious standard of the Administrative Procedure Act.

Even if we accept the Authority's "flagrant misconduct" standard as articulated in *Grissom,* 51 F.L.R.A. at 11–12, as the only limitation on § 7102, the Authority's decision here makes no sense. At least two components of the FLRA's "flagrant misconduct" standard have been misapplied: whether there was provocation; and the nature of the conduct. Under applicable Authority precedent, it was arbitrary and capricious for the FLRA not to deem the nature of the Egal's conduct flagrant.

The FLRA's own precedent holds that "[a] physical response, in the context of a labor-management dispute, by either the union representative or a manager is deemed beyond the limits of acceptable behavior." *U.S. Marshals,* 26 F.L.R.A. at 901. Resort to such behavior has only

been excused "in certain limited instances and in response to particular situations" such as "a highly charged situation" which is "provoked by the behavior of a union or management representative." *USDOL,* 20 F.L.R.A. at 569. Specifically, *USDOL* involved what could appropriately be characterized as an act of self-defense. *See Charleston Air Force Base,* 57 F.L.R.A. at 83 n. 4 (dissent of Chairman Cabaniss).

In the case at bar, though the ALJ and the FLRA both attempted to downplay it, Egal's behavior did not consist merely of inappropriate words, but also *actual physical contact* and *physical intimidation,* so that his co-worker had a reasonable apprehension of "some unpredictable blow." Although the ALJ and the FLRA shy away from characterizing this as an "assault and battery" by definition, that is what it was. *See, e.g.,* BLACK'S LAW DICTIONARY 109 (7th ed. 1999). As observed by Chairman Cabaniss, the physical contact and the apprehension of "some unpredictable blow" clearly distinguish this case from *Flight Test Center,* 53 F.L.R.A. 1455. There the most the ALJ could conclude was that the employee's conduct "evidenced lack of respect." *Flight Test Center,* 53 F.L.R.A. at 1465. The employee in *Flight Test Center* "lean[ed] over the supervisor's desk and point[ed] his finger at the supervisor," but there was no assault, much less physical contact. *Id.* at 1456. Moreover, applying the *Grissom* standard relied on by the FLRA itself, *Grissom* only held that protection extends to union representatives engaged in protected activity even when they use "intemperate, abusive, or insulting language." *Grissom,* 51 F.L.R.A. at 11. In no way does *Grissom* suggest that physical intimidation or assaultive behavior is protected activity. The assaultive behavior here also distinguishes this case from virtually all of the cases relied on by the intervenor Union. For example, the

intervenor Union cites *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 283, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), a libel case, for the proposition that "federal law gives a union license to use intemperate, abusive or insulting language without fear of restraint or penalty if it believes such rhetoric to be an effective means to make its point." But that says nothing about physical contact and assault—it only addresses language. The only cases involving physical altercations relied on by the FLRA or the Union are those where there was adequate provocation: more than Fallaw's legitimate inquiry as to Egal's presence at Richardson's feedback session.

In contrast, the physical intimidation here, comprising the elements of an assault and battery, is the kind of behavior that the FLRA had said in *U.S. Marshals* and *USDOL* was "beyond the limits of acceptable behavior." 26 F.L.R.A. at 901, 20 F.L.R.A. at 569. To the extent that there was any provocation, a dubious proposition, the record certainly does not reflect that Fallaw "conducted [her]self in any manner which warranted physical assault." *U.S. Marshals,* 26 F.L.R.A. at 901.

Moreover, we observe that not only is the FLRA's balancing test for "flagrant misconduct" the same standard applied by the NLRB in interpreting 29 U.S.C. § 158(a)(1), but that test originates from NLRB precedent. *See Department of the Navy, Puget Sound Naval Shipyard,* 2 F.L.R.A. 53, 76, 1979 WL 9645 (1979) (referencing *NLRB v. Thor Power Tool Co.,* 351 F.2d 584, 587 (7th Cir.1965)). Indeed, the FLRA contends that its "flagrant misconduct" standard "has remained consistent with National Labor Relations Board (NLRB) law regarding the boundaries of protected activity." The Authority, far from striking out on its own with a unique standard, claims to be tracking with the NLRB. Thus in determining whether the FLRA has arbitrarily and capriciously applied this "consistent" standard, we may also examine our precedent reviewing NLRB application of the same standard. This Court's decision in *Felix Industries, Inc. v. NLRB,* 251 F.3d 1051 (D.C.Cir. 2001), is persuasive. There we found that the NLRB's "offhand treatment of the nature of [a union employee's] outburst depart[ed] from precedent," and was "arbitrary and capricious." *Felix,* 251 F.3d at 1056. The outburst there was "brief" and "verbal," consisting of calling his supervisor a "f–king kid" three times. *Id.* at 1054. We remanded because the Board, in holding that conduct protected, failed to properly balance these statements against the other factors. That mere words could (though we did not hold that it must) result in a loss of privilege under the "flagrant misconduct" standard, also suggests that the physical intimidation here was improperly weighed by the FLRA.

If, as read by the Authority, the FLRA's "flagrant misconduct" standard prohibits the Air Force from taking disciplinary action under the facts of this case, then the Authority has altered, indeed, gutted, its "flagrant misconduct" standard without explanation. The FLRA's suggestion that if an "assault and battery occurred . . . there is no reason to believe that it is dispositive of the question of flagrant misconduct," *Charleston Air Force Base,* 57 F.L.R.A. at 81, is an unreasoned departure from *U.S. Marshals* and *USDOL,* which held such conduct "beyond the limits of acceptable behavior" except when made from a defensive posture. By any measure, the FLRA's decision was arbitrary and capricious.

### C. *Application of Standards*

█ In sum, we agree with Chairman Cabaniss that if the "Authority really in-

tends to follow a test that could condone an assault and battery situation by not declaring it to be outside the boundaries of protected activity," then it is time for the FLRA to find a new test. *Charleston Air Force Base*, 57 F.L.R.A. at 83 (dissent of Chairman Cabaniss). Physical intimidation and touching amounting to assault and battery, during the course of otherwise protected activity, is not condoned nor immunized by the federal labor laws, and any interpretation permitting such activity is inherently unreasonable and due no deference. As we stated in a related context, we "understand that labor negotiations produce occasional intemperate outbursts and, in a specific context, such *language* may be protected," however, it "defies explanation that a law enacted to facilitate collective bargaining and protect employees' right to organize prohibits employers from seeking to maintain civility in the workplace." *Adtranz*, 253 F.3d at 27–28 (emphasis added). Here, we face not just intemperate language, but assaultive, tortious, possibly criminal behavior. As Chairman Cabaniss concluded, "improper physical contact, with or without threatening gestures or conduct constituting an assault" does nothing to further the goal of "facilitat[ing] communication between the parties." *Charleston Air Force Base*, 57 F.L.R.A. at 84 (dissent of Chairman Cabaniss). Indeed, "it is preposterous" to suggest as the FLRA seems to, "that employees are incapable of organizing a union or exercising their other statutory rights ... without resort to abusive or threatening language" or without resort to a physical response. *Adtranz*, 253 F.3d at 26. To hold otherwise is not only error, but is "remarkably indifferent," *id.* at 27, to the basic need of employers to maintain decorum, not to mention the very safety of other employees. *See, e.g.,* Jerry Goldstein, *Workplace Violence v.*

*Employee Rights,* MD. B.J. Jan.–Feb.2002, at 46, 46 ("Nearly 1,000 workers are murdered and 1.5 million are assaulted in the workplace each year.").

■ The Authority concludes that 5 U.S.C. § 7102 "protects those who conduct labor relations ineffectively as well as those who conduct it effectively, as long as they do not cross the line and engage in flagrant misconduct." *Charleston Air Force Base*, 57 F.L.R.A. at 81. This boilerplate language establishes nothing. While it is not at all clear to us what definition of flagrant misconduct could exclude Egal's acts, even applying the Authority's standard by its most restricted terms, the Authority's conclusion cannot be upheld. *See* Part II.A, *supra.* This Court has "previously rejected a suggestion from the [NLRB] that employees engaging in protected activity 'could not be dismissed unless they were involved in flagrant, violent, or extreme behavior.'" *Felix*, 251 F.3d at 1055 (quoting *Aroostook Co. v. NLRB*, 81 F.3d 209, 215 n. 5 (1996)). The same is true here. Flagrant misconduct is a sufficient, but not necessary, condition for a loss of privilege under § 7102. Even without reference to the "efficiency of the service" standard of 5 U.S.C. §§ 7503(a), 7513(a), relied upon by the Air Force, it is not a reasonable interpretation of § 7102 to hold that it protects all union activity except "flagrant misconduct," particularly if flagrant misconduct does not include assault and battery in the workplace. However, we do not read the Authority's earlier cases as holding that only "flagrant misconduct" crosses the line into unprotected activity. The FLRA has held, as noted in Chairman Cabaniss's dissent, that "[c]onsistent with section 7102 ... an agency has the right to discipline an employee who is engaged in otherwise protected activity for remarks or actions that 'exceed the boundaries of protected activi-

ty *such as* flagrant misconduct.'" *Grissom,* 51 F.L.R.A. at 11 (quoting *U.S. Air Force Logistics Command, Tinker Air Force Base,* 34 F.L.R.A. 385, 389 (1990)) (emphasis added). It is *Grissom* that the FLRA relied on here for its "flagrant misconduct" standard and *Grissom* identifies "flagrant misconduct" as only *illustrative* of exceeding the boundaries of protected activities.

We have no occasion to determine what actions, other than "flagrant misconduct," result in a loss of privilege under the federal labor laws. Indeed, as we held in Part II.B, *supra,* Egal's conduct falls within the scope of what, heretofore, the FLRA has characterized as flagrant misconduct. We also note that it might be an unfair labor practice if an employer unevenly or selectively directs disciplinary action only against offending employees seeking to exercise their statutory rights, but there is no suggestion that this has happened here. *See Adtranz,* 253 F.3d at 27–28; *cf. R.A.V. v. City of St. Paul,* 505

U.S. 377, 383–84, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). However, we hold that regardless of the scope of the Authority's "flagrant misconduct" standard, or any other standard it might adopt to determine the outer limits of protected union activity under § 7102, one thing is clear: Egal's assaultive behavior is unprotected by the federal labor laws.

### III.   Conclusion

We grant the petition for review and reverse the FLRA. On remand the Authority is ordered to dismiss the unfair labor practice complaint against the Air Force and to reinstate the disciplinary actions taken against Egal.