**NATIONAL LABOR RELATIONS BOARD Petitioner,**

v.

**HONDA OF AMERICA MANUFACTURING, INC. Defendant–Appellant.**

No. 01–2350.

United States Court of Appeals, Sixth Circuit.

Aug. 14, 2003.

Before CLAY and ROGERS, Circuit Judges; and COFFMAN, District Judge.*

COFFMAN, District Judge.

The National Labor Relations Board ("the Board") seeks enforcement of its order that Honda of America Manufacturing, Inc. ("Honda") violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("the Act") when it disciplined and suspended Donald Alan DeWald, Jr. ("Dewald") for statements he made in a newsletter. Honda opposes enforcement, arguing (1) that the Board's interpretation of the Act is unreasonable and (2) that the Board's decision is not supported by substantial evidence. We enforce the Board's order.

I. Facts and Procedural History

Honda has employed DeWald as an associate in its East Liberty, Ohio, plant since October 1, 1990. During his employment with Honda, DeWald has distributed numerous newsletters and other materials that express his strong support for unions and his objections to various terms and conditions of his employment with Honda. The Board found, and Honda does not dispute, that DeWald's newsletters constituted "concerted activities" as used in Section 7 of the Act. *See* 29 U.S.C. § 157.

This matter involves the intersection of DeWald's concerted activity with Rule 13

* The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

of Honda's Associate Standards of Conduct, which prohibits an associate from using "abusive or threatening language to or about fellow Associates or creat[ing] an intimidating, hostile or offensive working environment." Rule 13 reflects one of Honda's core operating philosophies—respect for the individual. Honda believes that, in addition to furthering its corporate philosophy, Rule 13 assists it in complying with its legal duties under state and federal civil rights laws. Honda has enforced Rule 13 many times since its inception.

On May 18, 1998, DeWald sent an Associate Communication Line form, a bureaucratic device that allows associates to express concerns to management, to Kim Ryan, Benefits Department Manager. In the communication, DeWald claimed that a Honda benefits booklet he had received contained inaccuracies. On July 9, 1998, Laura Solomon, a Benefits Department employee, met with DeWald and provided him with Ryan's written response to his communication. DeWald was dissatisfied with Ryan's written response, which denied that the booklet contained any inaccuracies. DeWald's lack of satisfaction occasioned two more meetings with Solomon in July. At these meetings DeWald asked that Ryan meet with him to discuss the matter, but Ryan refused, believing that DeWald's concerns had been adequately addressed by her written response.

On October 20, 1998, DeWald distributed a newsletter he had written entitled "Honda vs. The Calendar." In the newsletter, DeWald expressed his belief that the benefits booklet was misleading and detailed DeWald's meetings with Solomon. In making his case that Honda was delib-erately misleading its employees, DeWald wrote:

> In each of these meetings I questioned why [Ryan] wouldn't meet with me. After all, I'd addressed my concerns about the booklet to her, not [Solomon]. *[Solomon] has a 17 thousand [sic] clock number and hadn't even been here long enough to have a benefit booklet of her own. The person Honda used to address this concern was someone who had no knowledge or hands on experience with the matter at hand.*
>
> *... I brought my benefit booklet into the next meeting and showed [Solomon], to her satisfaction that errors were indeed made by the Benefits dept. The next meeting, [Solomon] informed me that Ms. Ryan would not openly admit the mistakes,* which prompted me to ask why she would not meet with me face to face so we could verbally communicate to each other. *Either [Solomon] was not thoroughly conveying my facts to Ms. Ryan, or Ms. Ryan was not smart enough to figure out simple math,* which is highly unlikely for the manager of Benefits.

Stipulations, Ex. M, J.A. at JA0204 (emphasis supplied). When viewed in the context of DeWald's other newsletters, the October 20th newsletter implied that Honda purposefully misleads its employees so that the employees will not realize that a union would provide them with better benefits.

Honda found the portions italicized above to be inappropriate personal attacks on Solomon and Ryan in violation of Rule 13. On October 27, 1998, after considering DeWald's previous reprimands for Rule 13 violations,[1] Honda issued a manager-level

---

1. DeWald had been disciplined previously for a Rule 13 violation for inappropriate comments contained in a newsletter. In 1996, DeWald published a newsletter that urged a fellow employee to "Quit hiding, Lee, Come Out of the Closet" and repeatedly referred to the Honda bonus program as the "bone us" program. *In re Honda of Am. Mfg.,* 334 NLRB No. 98, 2001 WL 855868 (2001). DeWald received a manager-level counseling session, a three-day suspension, and a one-

counseling session and a three-day suspension to discipline DeWald for his comments.

DeWald filed a discrimination charge with the Board on November 8, 1998, and the General Counsel issued a Complaint and Notice of Hearing on December 16, 1998. The parties filed a stipulation of facts and a motion to transfer the case to the Board. The Board approved the motion and considered the matter on the parties' briefs and the stipulated record. The Board concluded that Honda violated sections 8(a)(1) and 8(a)(3) of the Act by disciplining DeWald for the comments he made while engaged in protected activity.[2] The Board ordered Honda to cease and desist from interfering with, restraining, or coercing employees in the exercise of activities protected by the Act. The Board also required Honda to compensate DeWald for any loss of earnings or other benefits suffered as a result of its discrimination against him, to remove from its files any reference to the unlawful discipline, and to post copies of a remedial notice.

The Board filed the instant application for enforcement of its order on October 4, 2003. Honda opposes the application, arguing that the Board's order is not supported by the record and is contrary to law.

## II.  Standard of Review

"[T]he task of defining the scope of [protected activity under the Act] 'is for the Board to perform in the first instance as it considers the wide variety of cases that come before it,' and, on an issue that implicates its expertise in labor relations, a reasonable construction by the Board is entitled to considerable deference." *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 829, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984) (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 568, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978)); *see also NLRB. v. Local 1131, UAW*, 777 F.2d 1131, 1136 (6th Cir.1985) (noting that the " 'function of striking [the balance between conflicting legitimate interests] to effectuate national labor policy is often a difficult and delicate responsibility, which Congress committed primarily to the [Board] subject to limited judicial review' ") (alterations in original, quoting *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 500–01, 98 S.Ct. 2463, 57 L.Ed.2d 370(1978)). Thus, when balancing the employee's right to engage in concerted activity against the employer's right to maintain order and respect, as in this case, the court must uphold the Board's determination unless it is illogical, arbitrary, or unreasonable. *NLRB v. Hartmann Luggage Co.*, 453 F.2d 178, 183–84 (6th Cir.1971); *see also Mobil Exploration & Producing U.S., Inc. v. NLRB*, 200 F.3d 230, 243 (5th

---

year suspension of transfer and promotion rights for his violation of Rule 13. The Board recently concluded that Honda did not violate the Act by disciplining DeWald in connection with the 1996 newsletter because the language DeWald employed was so offensive that DeWald forfeited his protection under the Act by its use. *Id.* DeWald has also committed other violations of Rule 13 that did not involve protected activity.

**2.**  Sections 8(a)(1) and 8(a)(3) protect an employee from interference with and discrimination on the basis of the employee's participation in concerted activities, respectively.

*See* 29 U.S.C.A. § 158. The language of the statute, in pertinent part, provides:

It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .

*Id.*

Cir.1999); *Earle Indus., Inc. v. NLRB*, 75 F.3d 400, 405 (8th Cir.1996).

Once the Board interprets the Act to determine the extent of protection afforded, the Board's findings of fact and application of law to the facts are reviewed under a "substantial evidence" standard, *FiveCAP, Inc. v. NLRB*, 294 F.3d 768, 776 (6th Cir.2002), which is met if the record as a whole contains " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Additionally, '[w]here the evidence supports two conflicting views, [the Court] may not disturb the Board's findings and its order must be enforced.' " *NLRB v. Main St. Terrace Care Ctr.*, 218 F.3d 531, 537 (6th Cir.2000) (quoting *NLRB v. Talsol Corp.*, 155 F.3d 785, 793 (6th Cir.1998)); *see also Ky. Gen., Inc. v. NLRB*, 177 F.3d 430, 435 (6th Cir.1999) (stating that "the Board's reasonable inferences may not be displaced on review even though [we may] justifiably have reached a different conclusion") (alteration in original, quoting *Turnbull Cone Baking Co. v. NLRB*, 778 F.2d 292, 295 (6th Cir.1985)).

### III.  Analysis

Honda attacks the Board's order on two grounds.  First, Honda argues that the Board's interpretation of Section 7 is arbitrary, illogical, and unreasonable.  Second, Honda argues that the Board's findings that it violated Section 7 are not supported by substantial evidence.  The court will address each in turn.

### A.  The Board's Interpretation

■ Section 7 of the Act guarantees employees the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.  "The fact that an activity is concerted, however, does not necessarily mean that an employee can engage in the activity with impunity.  An employee may engage in concerted activity in such an abusive manner that he loses the protection of § 7." *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 837, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984).  In analyzing whether DeWald's comments were protected, the Board stated that otherwise protected activity may become unprotected "if in the course of engaging in such activity, [the employee] uses sufficiently opprobrious, profane, defamatory, or malicious language."

Honda contends that the Board's "opprobrious, profane, defamatory, or malicious language" test is an unreasonable interpretation of the Act for two reasons.  First, Honda argues that the Board's test is unreasonable because it is unsupported by the case law.  Second, Honda argues that the Board's test is unreasonable because it fails to consider context in determining whether an employee's conduct is protected under the Act.

In *KBO, Inc. v. NLRB*, Nos. 94–6502, 95–5004, 1996 WL 499104 (6th Cir. Sept. 3, 1996), an unpublished opinion of this court, the court remarked that the "offensive, defamatory, or opprobrious" test was not expressly supported by Supreme Court or Sixth Circuit case law. *Id.* at *4 n. 3. While the test has not been explicitly adopted, the elements of the test do find support in the case law. *See NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 837, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984) ("An employee may engage in concerted activity in such an abusive manner that he loses the protection of § 7."); *Linn v. United Plant Guard Workers of Am., Local 114* 383 U.S. 53, 60–61, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (protection of Act may be forfeited by issuing "defamatory or insulting material known to be false"); *NLRB v. Mead Corp.*, 73 F.3d 74, 79 (6th Cir.1996) (observing that employers may ban insignias bearing slogans that "are patently offensive or vulgar"); *NLRB v.*

*Cement Transport, Inc.*, 490 F.2d 1024, 1029–1030 (6th Cir.1974) ("In the context of a struggle to organize a union, 'the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth,' so long as the allegedly offensive actions are directly related to activities protected by the Act and are not so egregious as to be considered indefensible.") (citations omitted). While "[o]ther phraseology has been used to describe what it takes for protection [under the Act] to be lost," *Am. Hosp. Ass'n. v. Von Ebers*, 230 NLRB 54, 56, 1977 WL 8752 (1977), the concept is the same—an employee engaging in otherwise protected activity may lose protection if, in the course of engaging in such activity, "he uses sufficiently opprobrious, profane, defamatory, or malicious language." *Id.*

The court further finds unpersuasive Honda's complaint that the Board's interpretation of the act is unreasonable because the Board's test focuses exclusively on the language used and ignores the context in which the alleged misconduct took place. The case law applying the test considers context in determining whether the language used was opprobrious, profane, defamatory, or malicious. *See, e.g., NLRB v. Cement Transp., Inc.*, 490 F.2d 1024, 1031 (6th Cir.1974) ("[C]onsidering the entire context in which Thompson made his comments, we cannot find them to be recklessly malicious, insubordinate, or unrelated to his protected activity."); *Adtranz ABB Daimler–Benz Transp., N.A. v. NLRB*, 253 F.3d 19 (D.C.Cir.2001) (noting that, in considering whether employee engaged in protected activity loses protection due to opprobrious conduct, NLRB must consider the nature of the outburst as well as other relevant factors) (citing *Atlantic Steel Co. v. Chastain*, 245 NLRB 814, 816, 1979 WL 10011 (1979)); *Am. Hosp. Ass'n. v. Von Ebers*, 230 NLRB 54, 56–57, 1977 WL 8752 (1977) (examining nature of language, extent of publication,

prior admonitions against activity, and maliciousness). Accordingly, the court does not find that the Board's test is an illogical, arbitrary, or unreasonable interpretation of the Act.

## B. The Board's Findings

The Board found that although "DeWald no doubt questioned the truthfulness of the individuals he named," the publication of the newsletter nevertheless remained protected activity under the Act. The Board considered the context of the statements within the newsletter, noting that DeWald "was expressing his belief that the individuals responsible for addressing his concerns about the employee booklet did not have the experience, knowledge, or capability to understand the complexity of the benefits described in the booklet." Given the connection between DeWald's statements and his protected message, the Board concluded that the fact that DeWald's. comments were directed at a fellow employee as well as at management did not withdraw the Act's protection.

Honda urges the Court to refuse to enforce the Board's order, alleging that the Board failed to consider DeWald's actions in context. When the totality of the circumstances are considered, Honda contends, it is clear that it did not violate Section 7 in disciplining DeWald for his violation of Rule 13. Consequently, Honda argues, the Board's decision is not supported by substantial evidence.

It is true that the Board did not engage in the systematic analysis preferred by Honda. However, the court does not find that the Board failed to consider the circumstances surrounding DeWald's statements. The Board noted that the statements were made in a newsletter addressing the alleged benefits of union representation, and the Board recognized

that the newsletter was distributed at the plant. While it did not engage in a detailed discussion, the Board noted that DeWald's history at Honda included numerous instances of distributing pro-union literature as well as prior discipline for violations of Rule 13. While DeWald's statements may have been insulting to both management and a fellow employee, the Board concluded, on balance, that the statements constituted protected activity under the Act.[3] The Court finds that the Board properly considered DeWald's conduct in context and that its conclusion that DeWald was disciplined for engaging in protected activity in violation of Section 8(a)(1) was supported by substantial evidence.[4]

### III. Conclusion

For the reasons stated above, we AFFIRM the Board's order, insofar as it finds that Honda violated Section 8(a)(1), and GRANT its petition for enforcement.

CLAY, Circuit Judge, Concurring in Judgment only.

I concur in the outcome the majority reaches, but since it appears to have applied the wrong legal standard, I am compelled to concur in the judgment only.

The majority adopts the NLRB's position, pursuant to which protected activity loses its protection only "if in the course of engaging in such activity, [the employee] uses sufficiently opprobrious, profane, defamatory, or malicious language." *See Am. Hosp. Ass'n v. Von Ebers*, 230 NLRB 54, 56, 1977 WL 8752 (1977). Other courts to have considered this issue have held that the NLRB must engage in a broader inquiry that weighs the totality of the circumstances in which the disputed incident occurred. *See e.g., Adranz ABB Daimler-Benz Transp., N.A., Inc. v. NLRB*, 253 F.3d 19 (D.C.Cir.2001) (characterizing the NRLB's position as "not even close" to reasonably defensible); *Felix Indus., Inc. v. NLRB*, 251 F.3d 1051, 1053, 1056 (D.C.Cir.2001) (declining to enforce an NLRB order when the NLRB did not properly apply a multi-factor balancing inuiry); *Carleton Coll. v. NLRB*, 230 F.3d 1075, 1081 (8th Cir.2000) ("In determining whether misconduct occurring in connection with protected activity is protected under the Act, we instruct[ ] the Board to take into account the nature of the misconduct, the nature of the workplace, and the effect of the misconduct on an employer's authority in the workplace."); *Earle Indus. v. NLRB*, 75 F.3d 400,406 (8th Cir. 1996) ("[T]he context of the misconduct [i]s

3. Honda asserts that "it is beyond reasonable argument that DeWald ... could have criticized the company's policies without the need to resort to personal attacks, and that doing so would not have diluted DeWald's underlying message." We disagree. Honda's characterization reduces DeWald's concerns to mere objections to Honda's accounting practices. DeWald's greater point, as demonstrated by the heading under which the comments were published, was that the inaccuracies in the booklet were not mistakes, but were intentionally misleading statements that Honda furthered by addressing employee concerns with persons who were inexperienced, incompetent, or deliberately unhelpful. Infused in this greater point is a subtext that a union would address such concerns with experi-

enced and knowledgeable personnel who would represent employees' interests rather than Honda's. While there may be gentler ways of expressing the alleged inadequacies than "[e]ither [Solomon] was not thoroughly conveying my facts to Ms. Ryan, or Ms. Ryan was not smart enough to figure out simple math," DeWald's belief that the employee benefits personnel were inadequately performing their duties was central to his message. Thus, inherent in DeWald's very message was an element that employee benefits personnel would most likely find insulting.

4. The Court declines to reach the question of whether the Board's conclusion that Honda violated Section 8(a)(3) was supported by substantial evidence.

the key to deciding whether the misconduct [i]s protected by the [NLRA].”); *KBO, Inc. v. NLRB*, Nos. 94–6502, 95–5004, 1996 WL 499104 (6th Cir. Sept. 3, 1996) (noting that the NLRB's position “finds no express support in Supreme Court of Sixth Circuit caselaw”); *Atl. Steel Co. v. Chastain*, 245 NLRB 814, 816, 1979 WL 10011 (1979) (balancing four factors, including “(1) the place of the discussion; (2) the subject matter of the discussion; (3) the nature of the employee's outburst; and (4) whether the outburst was, in any way, provoked by an employer's unfair labor practice”).

I have carefully studied the record, reviewed the parties' briefs, and considered their contentions at oral argument. Courts must strike a “balance between the employee's right to organize and the employer's right to maintain discipline.” *United States Postal Serv. v. NLRB*, 652 F.2d 409, 412 (5th Cir.1981). Given the totality of the circumstances, including the employer's interest and the rights of employees to unionize, I conclude that Honda violated § 8(a)(1) of the National Labor Relations Act. Again, I agree with the result the majority reaches, but not its legal analysis.